OPINION OF THE COURT
Harold Tompkins, J.
In this proceeding, Marjorie Fink and Lois Weiner seek to be appointed the committee over the person of their mother, Terry Siegel, who is comatose and in a vegetative state, with *271 the right to make all medical decisions on her behalf.[1] They express the intention not to perform a gastrostomy to insert a feeding tube. They also seek the authority to remove the intravenous tube in place currently providing nutrition to Mrs. Siegel and to halt all antibiotic therapy. This matter raises significant legal and moral issues relating to the individual rights of personal autonomy, appropriate medical treatment of the individuals incapable of rendering decisions on their own behalf, the rights of family members to represent an incapacitated loved one for the purpose of terminating treatment, and the limits of judicial authority in reviewing these sensitive issues.
PROCEDURAL HISTORY
This proceeding came on before the court by order to show cause signed on Thursday evening, April 16, 1987, and returnable Monday, April 20, 1987, at 2:00 p.m. The court heard testimony over a two-day period of the following witnesses: Dr. Eisenberg, Dr. Lau and Dr. Schaul and respondents Marjorie Fink, her husband and their daughter, Lois Weiner and her husband. In addition, the court heard testimony of Richard Godosky, Esq., the special guardian appointed by this court to protect the interests of Terry Siegel.[2] The entire medical records were placed in evidence. The following constitutes the court’s findings of fact, conclusions of law and decision.
FINDINGS OF FACT
The court finds by clear and convincing evidence:
1. That Terry Siegel is presently 79 years of age and has two daughters, Marjorie Fink and Lois Weiner. Terry Siegel has no assets and is maintained at the home on Medicaid and Social Security payments.
*272 2. Mrs. Siegel is semicomatose and responds only to painful stimuli and has been for the last 2Vi years. Her weight is 134 pounds and she has lost 27 pounds since February 1987, a period of two months. She suffers from meningioma of the brain, an inoperable brain tumor with resulting hydrocephalus. Her prior brain surgery makes her condition irreversible.
3. On March 10, 1987 after examination of Mrs. Siegel it was determined that she has a blockage in the esophagus which requires a gastrostomy and other procedures necessary on an emergency basis to sustain her life.
4. Thereafter a nasal tube was inserted to allow nutrition to Mrs. Siegel. However, since April 6, 1987 the blockage has made this procedure no longer successful and she is only receiving intravenous fluids with difficulty.
5. Mrs. Siegel is presently suffering from pneumonia and must have additional nutrition to survive which can only be accomplished by the surgical procedure known as a gastrostomy.
6. Unless this procedure or other similar ones are performed Mrs. Siegel will die.
7. Mrs. Siegel is terminally ill by reason of the inoperable brain tumor.
I further find by clear and convincing evidence that:
8. Mrs. Siegel when she was competent left instructions to terminate any life-reviving procedures where there is no hope of recovery.
9. That the daughters of Mrs. Siegel, Marjorie Fink and Lois Weiner, if appointed conservators will withhold their consent to perform the gastrostomy to insure that Mrs. Siegel’s prior wishes are respected.
CONCLUSIONS OF LAW
In this matter, the court is obliged to weigh the principles of respect for human life and personal autonomy. Respect for human life demands that respondents satisfy the highest burden of proof in civil cases, that of clear and convincing evidence, as to Mrs. Siegel’s intentions. In an opinion authored by then Associate Judge Wachtler (Matter of Storar, 52 NY2d 363 [1981], cert denied 454 US 858 [1981]), the Court of Appeals upheld the right of a competent individual to forego life-reviving and life-sustaining treatment where there was no reasonable medical chance of recovery. The court reaffirmed *273 this right of a patient to determine treatment even against medical opinion in Rivers v Katz (67 NY2d 485 [1986]). Judge Alexander based the patient’s right to determine treatment on the constitutional due process right of liberty and privacy.
This court also considered the recent decision of Justice Anthony Cerrato in Matter of Delio v Westchester County Med. Center (134 Misc 2d 206 [Sup Ct, Westchester County 1986]). Justice Cerrato declined to authorize the removal of a feeding tube from a 33-year-old man in a vegetative state. Justice Cerrato expressed concern over the prospect of a young man who could continue for many years and might be deprived of the benefit of future medical breakthroughs. Rightly in this court’s judgment, he expressed the belief that this resolution of the various interests by the Legislature would be preferable.[3]
The court has been advised that an appeal of Justice Cerrato’s decision was recently argued before the Appellate Division, Second Department. The brief of the Honorable James Hopkins, the guardian ad litem, former Justice of the Appellate Division, Second Department, is annexed to the report of Richard Godosky, Esq., the guardian ad litem in this proceeding.
The court has also reviewed the Annotation, Judicial Power to Order Discontinuance of Life-Sustaining Treatment (48 ALR4th 67) and the decisions of sister State jurisdictions referenced there.
Reviewing the decisions in this State, the guardian’s report and recommendations, the decisions of courts in sister States, this court must come to the conclusion that Mrs. Siegel’s wishes are paramount. The court finds that Mrs. Siegel expressed her desire that no procedures be taken to artificially extend her life. However, the court must distinguish between the performance of a gastrostomy, an active purposeful attempt to sustain Mrs. Siegel, and the intravenous feeding and antibiotic treatment currently being provided. The provision of nutrients and medication is more passive and less intrusive. This continuation of the status quo is appropriate, and the court believes that removal of the feeding and medication flow would artificially hasten Mrs. Siegel’s death. This the court declines to do. Mrs. Siegel will die shortly, as all human *274 beings must, but the manner of her death determines the nature of our society. The court respects and must honor what would be Mrs. Siegel’s decision not to allow the gastrostomy without any reasonable chance of success. It, however, will not authorize removal of antibiotics and nutrition through intravenous and the hastened death that will result. Death will occur as a natural result of Mrs. Siegel’s condition rather than any act of either commission or omission.
Accordingly, it is the decision of this court pursuant to article 78 of the Mental Hygiene Law that the daughters of Mrs. Siegel, respondents Marjorie Fink and Lois Weiner, are appointed the committee of the person of Terry Siegel without bond. Their authority shall allow them to determine appropriate medical and surgical treatment for their mother but shall not include the right to remove or to prevent intravenous feeding or to remove or to prevent antibiotic treatment.
In advance of this hearing, the court requested attorneys for the respondents to prepare a proposed order to. expedite this matter. After modification to reflect this court’s decision, the proposed order should bear on its back by the attorneys for the home, the special guardian and the District Attorney the language "acceptable as to form”. The order should also provide for a 48-hour stay in the event any party having standing wishes appellate review. In the event any person with standing seeks appellate review, I will, of course, extend the stay pending appellate review.
The court wishes to express its appreciation to Richard Godosky, Esq., a distinguished member of the Bar of the State of New York, who agreed to represent the interests of Mrs. Siegel without compensation. His representation and recommendations greatly assisted the court’s determination.
The court also thanks the attorneys for all parties for their professionalism and expertise both in the hearing and in the conferences in chambers.
The court wishes to" express its personal thanks to the respondent daughters of Mrs. Siegel for not forsaking their mother and for wanting her not to suffer and for carrying out her wishes as difficult as it has been.

. While Workmen’s Circle is technically the petitioner in this proceeding, it only seeks an order of this court concerning the appropriate actions. It is the respondents, Mrs. Siegel’s daughters, who seek the affirmative relief of being appointed the committee of the person with the expressed intentions of discontinuing all medical treatment.

. In recognition of the State’s interest in protecting human life and following the governing precedents expressed in Matter of Storar (52 NY2d 363 [1981], cert denied 454 US 858 [1981]) the court directed service of the order to show cause upon the District Attorney of Bronx County. An Assistant District Attorney was present through the hearings and participated in the hearing. He declined to express any recommendation concerning the withholding of medical services, treatment or surgical procedures.

. Alternatively, an individual may leave explicit instructions regarding treatment in the form of a "living will” (see, Matter of Saunders, 129 Misc 2d 45 [Sup Ct, Nassau County 1985]).